UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ANN O'BOYLE,

        Plaintiff,

        Case No. 23-cv-870-pp

v.

UNIFIN, INC.
and RESURGENT CAPITAL SERVICES, LP,

        Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR REMAND (DKT. NO. 8) AND REMANDING CASE TO MILWAUKEE COUNTY CIRCUIT COURT**

On March 27, 2023, Ann O'Boyle filed suit against Unifin, Inc. (an Illinois company) and Resurgent Capital Services, LP (of South Carolina) in Milwaukee County Circuit Court. Dkt. No. 1-1. The complaint alleged violations of the Fair Debt Collections Practices Act and the Wisconsin Consumer Act; it also contained class allegations. Id.

On June 30, 2023, Resurgent filed a notice of removal from state court to federal court under 28 U.S.C. §1441(a), asserting that the suit raised a federal question by alleging a violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§1692 *et seq.* Dkt. No. 1. On August 23, 2023, the plaintiff timely filed a motion to remand to Milwaukee County Circuit Court and asked the court to order the defendants to pay costs and fees under 28 U.S.C. §1447(c). Dkt. No. 8. The court will grant the plaintiff's motion to remand and award the plaintiff just costs and any actual expenses associated with filing the motion to remand.

1

## I. Allegations in the Complaint

On March 27, 2023, the plaintiff filed a class action against the defendants in Milwaukee County Circuit Court. Dkt. No. 1-1 at 2-19. The plaintiff alleged the defendants violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§1692 *et seq.*, and the Wisconsin Consumer Act ("WCA"), Wis. Stats. §§421-427. Id. at ¶1.

The plaintiff alleged that the defendants are debt collectors who were attempting to collect a debt from her on behalf of LVNV Funding, LLC, allegedly a purchaser of defaulted consumer debt. Id. at ¶¶10-12, 13-19. The plaintiff alleged that, on or about June 27, 2022, the defendants mailed a debt collection letter to her regarding an alleged debt owed to LVNV. Id. at ¶21. The plaintiff claimed that this letter was the first written communication the defendants had mailed to her regarding this alleged debt. Id. at ¶26.

The letter stated, "A judgment has been entered against you concerning your account from LVNV FUNDING LLC with ************7260, currently owed to LVNV FUNDING LLC." Id. at ¶28, page 21. The letter listed the "Total Amount of Debt Now" as "$1,418.74" and indicated the plaintiff was charged "$292.17" in interest. Id. at ¶¶30, 31, page 21. The complaint alleged that these figures overstated the debt. Id. at ¶¶32-37. The plaintiff noted that according to Milwaukee County Circuit Court records, the total amount of the relevant default judgment, inclusive of costs and fees, was $1,126.57, and the default judgment was entered on February 23, 2018. Id. at ¶32. The plaintiff alleged that when applying the applicable post-judgment interest rate of 5.5%

2

per year, the maximum amount of interest which could have accrued would be approximately $269.07. Id. at ¶35. The plaintiff asserted that her debt was overstated "because the defendants and the creditor were either: (1) improperly assessing post-judgment interest at an annual rate of 6.0%; or (2) assessing compound interest; or (3) otherwise miscalculating the rate and amount of post-judgment interest legally applicable to the debt." Id. at ¶37. The plaintiff alleged that the letter violated the FDCPA and the WCA because the defendants "attempt[ed] to collect an amount from [the] [p]laintiff in excess of the amount permitted by law." Id. at ¶76.

The letter also stated, "Because of the interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater." Id. at ¶38, page 22. The plaintiff contended that "[g]iven the debt was reduced to judgment . . . [the] [p]laintiff's alleged debt was no longer subject to 'late charges' or 'other charges.'" Id. at ¶39. The plaintiff characterized the defendants' statement regarding "late charges" or "other charges" as "materially false, deceptive, and misleading." Id. at ¶47. The plaintiff alleged that this "misleading" statement violated the FDCPA and the WCA. Id. at ¶¶82-84.

The plaintiff alleged that she "was confused and misled" by the letter, and that the "unsophisticated consumer" would be similarly "confused and misled." Id. at ¶¶48-49. The plaintiff did not allege that she took any action to her detriment in reliance on the letter. The complaint's "prayer for relief,"

3

however, requested "actual damages," among other types of relief. Id. at page 19.

## II. The Plaintiff's Motion

### A. Standard

"On a motion to remand, the party invoking removal authority bears the burden of establishing the court's jurisdiction, and all doubt is resolved in favor of remand." Paldrmic v. Altria Corp. Servs., Inc., 327 F. Supp. 2d 959, 963 (E.D. Wis. 2004) (citing Milwaukee Carpenter's Dist. Council Health Fund v. Philip Morris, Inc., 70 F. Supp. 2d 888, 892 (E.D. Wis. 1999)). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. §1447(c)).

Article III standing is an "essential component of Article III's case-or-controversy requirement," and a "threshold jurisdictional question." Apex Digital, Inc. v. Sears, Roebuck & Co., 572 F.3d 440, 443 (7th Cir. 2009) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)). "Standing is an element of subject-matter jurisdiction in a federal civil action." Moore v. Wells Fargo Bank, N.A., 908 F.3d 1050, 1057 (7th Cir. 2018). To have Article III standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338, (2016). To establish an injury in fact, a plaintiff must show that she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Id. at 339. A plaintiff

4

does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." Nettles v. Midland Funding LLC, 983 F.3d 896, 899 (7th Cir. 2020) (citing Spokeo, Inc., 578 U.S. at 341); see also Raines v. Byrd, 521 U.S. 811, 820 n.3 (1997) ("It is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.").

A party removing a case from state to federal court must "establish that all elements of jurisdiction—including Article III standing—existed *at the time of removal.*" Collier v. SP Plus Corp., 889 F.3d 894, 896 (7th Cir. 2018) (emphasis added); see also Thornley v. Clearview AI, Inc., 984 F.3d 1241, 1244 (7th Cir. 2021) (indicating that "the party that wants the federal forum is the one that has the burden of establishing the court's authority to hear the case"). If a removed case lacks Article III standing, it is appropriate to remand the action back to state court. See Thornley, 984 F.3d at 1249.

B.  The Parties' Arguments

1.  *The Plaintiff's Motion to Remand (Dkt. No. 8)*

The plaintiff argues that this federal court must remand the case to state court because the complaint does not allege a "concrete injury" for purposes of Article III and the court lacks subject-matter jurisdiction. Dkt. No. 9 at 1-2. The plaintiff argues that a series of recent Seventh Circuit cases—particularly Markakos v. Medicredit, Inc., 997 F.3d 778 (7th Cir. 2021)—establishes that a district court does not have subject-matter jurisdiction over an FDCPA case

5

based on language in a dunning letter unless the plaintiff expressly alleges that the violation caused her to act to her detriment. Id. at 5. The plaintiff asserts that her complaint alleges only that she was "confused and misled," not that she paid any additional money or took other steps to her detriment because of a reliance upon the alleged misrepresentation in the letter. Id. at 8-9. The plaintiff argues that these allegations are insufficient to confer Article III standing. Id. at 8-9.

The plaintiff asks the court to award her the costs and expenses associated with filing the motion to remand. Id. at 9-11. The plaintiff claims that the defendants lacked any objectively reasonable basis for removing the case given the Seventh Circuit's multiple rulings in cases in which the plaintiff alleged that the language of a dunning letter violated the FDCPA but did not allege that the plaintiff took any action to his/her detriment. Id. The plaintiff asserts the defendants have "not provided any basis whatsoever to support federal jurisdiction" and that the "Seventh Circuit decision in Thornley has foreclosed any possibility that [defendant] Resurgent can rely on discovery to show jurisdiction based on the fact that Plaintiff suffered a concrete harm that was not alleged in the Complaint." Id. (citing Thornley v. Clearview AI, Inc., 984 F.3d 1241, 1248-49 (7th Cir. 2021)).

6

Case 2:23-cv-00870-PP   Filed 10/10/23   Page 6 of 17   Document 17

## 2. *Defendant Resurgent Capital Services, LP's Response in Opposition to Plaintiff's Motion to Remand (Dkt. No. 10)*[1]

The defendant argues that the plaintiff has alleged a concrete harm that satisfies the injury-in-fact requirement of Article III standing. Dkt. No. 10 at 5, 8. The defendant acknowledges that "[s]tanding in the FDCPA context has become trickier over roughly the last three years with a slate of cases holding, in essence, that a mere statutory violation of the FDCPA is insufficient to confer standing upon a Plaintiff." Id. at 4. The defendant claims that after "[t]rying to thread the needle between the recent standing decisions," it "*appears* that [the] [p]laintiff has alleged an injury in fact, and the motion to remand should be denied." Id. at 4-5 (emphasis added).

The defendant contends that the plaintiff has alleged a concrete harm by claiming that the debt overstatement in the letter was an attempt to get her to pay more than she owed. Id. at 5-10. In support of this argument, the defendants rely primarily on Keele v. Wexler, 149 F.3d 589, 593-94 (7th Cir. 1998). Id. at 7-8. The defendant argues that the Keele court determined that a plaintiff had standing when a "demand tried to add an unauthorized amount to the debt owed—that is, tried to get the plaintiff to pay more than owed;" the defendant asserts that the Keele court made this determination "[e]ven though the plaintiff did not pay the fee." Id. at 7. The defendant recognizes that Keele

---

[1] Section 1446(b)(2)(a) states that when a case is removed, "solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action." Resurgent filed the notice of removal. Dkt. No. 1. Resurgent indicated, however, that it had "obtained approval for removal from the other Defendant, Unifin, Inc., in this matter." Id. at ¶6. That said, defendant Unifin, Inc. did not respond to the plaintiff's motion to remand.

7

"was decided 22 years before the recent standing cases from the Seventh Circuit began," but notes that the Seventh Circuit recently cited Keele in Mack v. Resurgent Capital Servs., L.P., 70 F.4th 395, 406-07 (7th Cir. 2023). Id. The defendant contends that the Mack court "found that taking time to dispute [a] debt [for a second time], mailing a letter, and purchasing a stamp was sufficient to establish an injury in fact." Id. The defendant argues that the facts in this case resemble those in Keele and Mack "in that there are *plausibly* nominal damages related to the alleged charging of improper interest on a judgment." Id. at 8 (emphasis added).

The defendant also contends that the plaintiff's request for "actual damages" demonstrates a concrete harm. Id. at 5-10. The defendant asserts that "it logically follows that in order to determine that the improper interest was being charged, [the] [p]laintiff suffered an injury in fact." Id. at 9. The defendant argues that the "[p]laintiff does not state in the Motion to Remand that she is not seeking and has not suffered actual damages," but that "she tip-toes around it and simply states that she did not prioritize other debts or pay the allegedly incorrect interest." Id. The defendant claims that "[w]ithout [a] clear statement, *the plausible inference* is that Plaintiff suffered an actual injury from the alleged improper interest on the judgment." Id. (emphasis added). The defendant maintains that the court should not remand because "there *could* clearly be circumstances, if remanded to state court, where Plaintiff later states in a deposition or discovery that she suffered actual damages as a result of the interest on the judgment." Id. (emphasis added).

8

### 3. *Plaintiff's Reply Brief in Support of Motion to Remand to State Court (Dkt. No. 11)*

The plaintiff reiterates that binding authority from the Seventh Circuit expressly rejects the defendant's two primary arguments. Dkt. No. 11 at 2. To dispute the defendant's first argument——that the allegedly improper assessment of interest alone is sufficient to confer standing—the plaintiff cites, among other cases, Nettles v. Midland Funding, LLC, 983 F.3d 896 (7th Cir. 2020). Id. The plaintiff claims the Nettles court held "that simply receiving a debt collection letter which overstates the debt is insufficient to confer standing, even where there is no indication that the plaintiff attempted to dispute such debt." Id. at 7. The plaintiff also contends that the defendant's reliance on Keele and Mack is misguided. Id. at 4-5. The plaintiff asserts the Keele court never addressed the issue of whether the plaintiff suffered an "injury-in-fact" for the purposes of Article III standing; it addressed whether the plaintiff had "standing to sue as a class representative." Id. at 4. Regarding Mack, the plaintiff first notes that Mack cited Keele only for the proposition that "[t]he FDCPA does not require proof of actual damages as a precursor to the recovery of statutory damages." Id. The plaintiff also notes that the Mack court's conclusion that the plaintiff had standing "was grounded in the fact that the consumer-plaintiff had incurred *actual damages* because she had to dispute the debt *twice*." Id. (emphasis in original). The plaintiff argues that the circumstances in this case are closer to the facts of Nettles than Mack. Id. at 5-7

To dispute the defendant's second argument—that a demand for actual damages in the plaintiff's prayer for relief establishes standing—the plaintiff cites Collier v. SP Plus Corporation, 889 F.3d 894, 896 (7th Cir. 2018). Id. at 7. The plaintiff observes the Collier court stated that "mere reference to 'actual damages' in the complaint's prayer for relief does not establish Article III standing." Id. The plaintiff concludes by reiterating that the defendant has not met its burden to demonstrate standing. Id. at 7-9.

C. Analysis

1. *Article III Standing*

In recent years, the Seventh Circuit has ruled in a "slew of cases" that "the violation of an FDCPA provision, whether 'procedural' or 'substantive,' does not necessarily cause an injury in fact." Markakos, 997 F.3d at 780 (listing Seventh Circuit cases addressing this issue). The court has held that to fulfill the injury-in-fact requirement, the violation must have "harmed or presented an 'appreciable risk of harm' to the underlying concrete interest that Congress sought to protect." Id. (quoting Casillas v. Madison Ave. Assocs., Inc., 926 F.3d 329, 333 (7th Cir. 2019)). In Markakos, the Seventh Circuit provided examples of concrete harms that an FDCPA violation could cause. Id. It explained that "an FDCPA violation might cause harm if it leads a plaintiff to pay extra money, affects a plaintiff's credit, or otherwise alters a plaintiff's response to a debt." Id. (citing Larkin v. Fin. Sys. of Green Bay, Inc., 982 F.3d 1060, 1066 (7th Cir. 2020)).

Seventh Circuit precedent establishes that a plaintiff does not satisfy the injury-in-fact prong of standing under the FDCPA simply because she feels intimidated, misled, or confused by a creditor's communications. See Gunn v. Thrasher, Buschmann & Voelkel, P.C., 982 F.3d 1069, 1071 (7th Cir. 2020) (determining plaintiffs lacked standing despite arguing that a misleading letter caused them to be "annoyed or intimidated"); Nettles, 983 F.3d at 900 (determining that receipt of a misleading letter showing an overstatement of debt owed absent any other harm does not establish standing); Brunett v. Convergent Outsourcing, Inc., 982 F.3d 1067, 1068-69 (7th Cir. 2020) (holding that confusion alone does not satisfy the injury-in-fact prong of standing). Specifically regarding feelings of confusion, the Seventh Circuit has stated that

> [a] debtor confused by a dunning letter may be injured if she acts, to her detriment, on that confusion—if, for example, the confusion leads her to pay something she does not owe, or to pay a debt with interest running at a low rate when the money could have been used to pay a debt with interest running at a higher rate. *But the state of confusion is not itself an injury*. . . .
>
> That [a debtor's] confusion led her to hire a lawyer does not change the evaluation. . . . A desire to obtain legal advice is not a reason for universal standing. . . . Many people think that an advisory opinion will set their minds at ease, but hiring a lawyer in quest of a judicial answer does not permit a federal court, operating under Article III, to give that answer.

Brunett, 982 F.3d at 1068-69 (emphasis added); see also Mack, 70 F.4th at 406 (finding that the plaintiff had suffered an injury-in-fact after disputing a debt for second time because she "spent extra money not to clear up her confusion but in order to preserve her right to seek validation, which she had been misled to believe she failed to do the first time").

Here, the plaintiff has alleged only that she "was confused and misled" by the letter. Dkt. No. 1-1 at 12. Regarding the overstatement of the amount owed, the plaintiff alleges that the defendants "*attempt[ed]* to collect an amount from Plaintiff in excess of the amount permitted by law" (Dkt. No. 1-1 at 17); she has not alleged that the defendants *succeeded* in collecting that—or any—amount. The the plaintiff has not claimed that she expedited payment of this debt, prioritized this debt over other debts or took any other detrimental action because of the letter.

The plaintiff does not have the alleged injury-in-fact required for Article III standing, and the defendant has not established subject-matter jurisdiction. See Thornley, 984 F.3d at 1249. The court agrees that the facts of this case more closely resemble the facts of Nettles than Mack. Dkt. No. 11 at 5-7. Like the plaintiff in Nettles, the plaintiff here received a letter that overstated the amount of her debt, "[b]ut her complaint does not allege that the statutory violations harmed her in any way or created any appreciable risk of harm to her." Nettles, 983 F.3d at 900. Unlike the plaintiff in Mack, the plaintiff here was not "misled to her financial detriment."[2] Mack, 70 F.4th at 406-07

---

[2] The defendant's reliance on Keele, 149 F.3d at 593-94, is unpersuasive. First, the decision in Keele never addressed the issue of whether the plaintiff suffered an "injury-in-fact" for the purposes of Article III standing, addressing instead whether the plaintiff had "standing to sue as a class representative." 149 F.3d at 592-94. Second, as the defendant recognizes in its own brief, Keele "was decided 22 years before the recent standing cases from the Seventh Circuit began." Dkt. No. 10 at 7. The Seventh Circuit's recent precedent is consistent and controlling. Finally, Mack did not revitalize Keele as the defendant argues. Dkt. No. 10 at 7-8. Mack cited Keele for the principle that "[t]he FDCPA does not require proof of actual damages as a precursor to the recovery of statutory

12

(determining plaintiff had suffered an injury-in-fact after disputing debt for second time because "[f]ixing the problem that the Resurgent Letter created caused Mack to *again* leave her home where she was caring for ill relatives, travel to the library, type and print the letter, go to the post office and *again* pay to mail the letter to the defendants") (emphasis added)). Here, the only arguably detrimental action the plaintiff took in response to the letter was to hire an attorney and pursue this case, but that alone does not satisfy the injury-in-fact standard. See Brunett, 982 F.3d at 1068-69

The defendant's argument that the plaintiff's request for "actual damages" satisfies the injury-in-fact has no merit. The Seventh Circuit has held that "[a] mere reference to 'actual damages' in the complaint's prayer for relief does not establish Article III standing." Collier, 889 F.3d at 896; see also Clark v. Client Servs. Inc., Case No. 22-cv-1410-pp, 2023 WL 1098446, at *4 (E.D. Wis. Jan. 30, 2023) ("Speculating that there might be a concrete injury beyond the need to avoid stress, based solely on the plaintiff's use of the phrase 'actual damages,' is inconsistent with the Seventh Circuit's instruction to focus on the allegations in the complaint.").

The defendant has failed to meet its burden to show the court has subject-matter jurisdiction. See Thornley, 984 F.3d at 1244 (indicating that "the party that wants the federal forum is the one that has the burden of establishing the court's authority to hear the case"). The court is unpersuaded

---

damages." Mack, 70 F.4th at 407 (quoting Keele, 149 F.3d at 593-94). This basic principle does not conflict with the recent Seventh Circuit precedent.

13

by the defendant's claim that "there are *plausibly nominal damages* related to the alleged charging of improper interest on a judgment" and the defendant's speculation that, after remanding, the plaintiff "*could* . . . later state[] . . . she suffered actual damages as a result of the interest on the judgment." Dkt. No. 10 at 8-9. (emphasis added). The defendant had the burden to "establish that all elements of jurisdiction—including Article III standing—existed *at the time of removal.*" Collier, 889 F.3d at 896. The defendant has not met that burden.

The court will grant the plaintiff's motion and will remand the case to the Milwaukee County Circuit Court.

### 2. *Costs and Expenses*

If warranted, the district court's "order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. §1447(c). Generally, whether to award costs and fees "rests within the district court's discretion." Fincher v. S. Bend Hous. Auth., 578 F.3d 567, 569 (7th Cir. 2009). But a district court may award fees under §1447(c) "only where the removing party lacked an *objectively reasonable basis* for seeking removal." Martin v. Franklin Cap. Corp., 546 U.S. 132, 141 (2005) (emphasis added). The Seventh Circuit has held that, "as a general rule, if, at the time the defendant filed his notice in federal court, clearly established law demonstrated that he had no basis for removal, then a district court should award a plaintiff his attorneys' fees." Lott v. Pfizer, Inc., 492 F.3d 789, 793 (7th Cir. 2007). In contrast, "if clearly established law did not foreclose a defendant's basis for removal, then a district court should not

14

award attorneys' fees." Id. Under this standard, costs and expenses "may be awarded when removal is clearly improper, but not necessarily frivolous." Jackson County Bank v. DuSablon, 915 F.3d 422, 424 (7th Cir. 2019); see also Martin, 546 U.S. at 138-40 (explaining the rationale for fee-shifting in appropriate cases and indicating that section 1447(c) does not create a strong presumption in favor or against awarding fees on remand).

As the court has explained, the Seventh Circuit recently has decided what it characterizes as a "slew of cases" holding that "the violation of an FDCPA provision, whether 'procedural' or 'substantive,' does not necessarily cause an injury in fact." Markakos, 997 F.3d at 779-780. ("In the last five months, we've held eight times that a breach of the Fair Debt Collection Practices Act ('FDCPA') does not, by itself, cause an injury in fact. We now repeat that refrain once more."). The defendant's brief in opposition to the motion for remand acknowledges this: "[s]tanding in the FDCPA context has become trickier over roughly the last three years with a slate of cases holding, in essence, that a mere statutory violation of the FDCPA is insufficient to confer standing upon a Plaintiff." Dkt. No. 10 at 4.

Given the number of cases the Seventh Circuit has decided and the defendant's acknowledgment of the trend in the precedent, the defendant "lacked an *objectively reasonable basis* for seeking removal." Martin, 546 U.S. at 141 (emphasis added). The Seventh Circuit's precedent constitutes "clearly established law [that] demonstrate[s] [the defendants] had no basis for removal." Lott, 492 F.3d at 793. As the defendant states in its own brief, "Many

15

point to Casillas . . . as the case that paved the way for the recent spate of standing decisions." Dkt. No. 10 at 4. The Seventh Circuit decided Casillas in 2019, approximately four years before the defendant filed the notice of removal. Casillas, 926 F.3d at 329 (listing the date decided as "June 4, 2019"). Nettles, the facts of which are similar to the facts in this case, was decided in late 2020. Nettles, 983 F.3d at 896 (listing the date decided as "December 21, 2020"). The court will award the plaintiff any actual expenses associated with filing her motion to remand. Because defendant Unifin, Inc. did not file its own notice of removal (only consenting to Resurgent's notice, according to Resurgent), only Resurgent will be responsible for paying the plaintiff's costs and expenses.

### III. Conclusion

The court **GRANTS** the plaintiff's motion to remand to state court. Dkt. No. 8.

Under 28 U.S.C. §1447(c), the court **AWARDS** the plaintiff costs and actual expenses incurred in filing the motion for remand, briefing that motion and filing the reply brief. The court **ORDERS** that by the end of the day on **October 27, 2023**, the plaintiff must file an accounting of her costs and expenses. If it chooses to do so, defendant Resurgent Capital Services may object to the plaintiff's accounting of costs and fees by the end of the day on **November 10, 2023**.

The court **ORDERS** that this case is **REMANDED** to Milwaukee County Circuit Court.

The court **ORDERS** that the Rule 16 Scheduling Conference, set for October 12, 2023 at 10:00, is **REMOVED** from the court's calendar.

Dated in Milwaukee, Wisconsin this 10th day of October, 2023.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**
